# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CIVIL ACTION NO. 5:20-CV-00070-KDB-DSC

| | |
|---|---|
| **Sunbelt Rentals, Inc.,**<br><br>Plaintiff,<br><br>v.<br><br>**Second Life Equipment, LLC and Michael Guzman,**<br><br>Defendants. | **ORDER** |

**THIS MATTER** is before the Court on Plaintiff's Motion for Partial Summary Judgment (Doc. No. 127). Defendants, who are not represented by counsel, have not responded to the motion; but the Court has still carefully considered the merits of the motion based on the full record. For the reasons discussed below, the Court will **GRANT** the motion and enter Partial Summary Judgment in favor of Plaintiff.

## I. RELEVANT BACKGROUND

Sunbelt Rentals, Inc., is a rental company offering various products, including construction equipment and industrial tools. In 2008 Sunbelt hired Michael Guzman and in 2016 promoted him to Manager of Fleet Operations. His duties included the disposal of aged equipment, which was often done through third-party auction houses. After his promotion, Guzman created Second Life Equipment, LLC with his wife, Jessica Guzman, and "Eric Dixon." "Eric Dixon" is a fictitious name that Guzman used to help run Second Life. Second Life was allegedly a purchaser and reseller of used equipment.

1

Between June 2019 and May 2020, Guzman engaged in a ruse to defraud Sunbelt by selling its assets through Second Life and another shell company. Guzman used bidadoo, an online auction house, to sell equipment owned by Sunbelt. Guzman, as "Eric Dixon," contacted bidadoo and expressed an interest in selling equipment that he claimed had been sold to Second Life by Sunbelt. When bidadoo contacted Guzman, as a representative of Sunbelt, directly to confirm the sale, he hoodwinked them by confirming "Dixon's" story.

Due to this deception, 398 assets rightfully belonging to Sunbelt were uploaded on Second Life's customer portal with bidadoo and sold. The proceeds were then deposited into a Wells Fargo account controlled by the Guzmans. The Guzmans used the proceeds to purchase various properties, vacations, and investments in securities. To further conceal this ruse, Guzman manipulated the internal records of Sunbelt. This deceit was achieved by: (1) altering serial numbers for certain equipment in Sunbelt's system to make it appear that the equipment had been previously sold by Sunbelt, even though in reality it remained in Sunbelt's possession; (2) falsifying Sunbelt's records to make it appear that certain equipment had been disposed of or written off the books as junk when the equipment had not in fact been junked and still belonged to Sunbelt; and (3) manipulating credit remittances from equipment manufactures and trade package partners, by adding or dropping equipment from spreadsheets, while ensuring the dollar value remained the same, so that, while the assets listed might be different, the credit shown would match.

In the associated criminal case, *United States v. Michael R. Guzman*, Case No. 5:21-CR-31, Guzman pled guilty to counts of wire fraud and money laundering. Guzman further admitted that the proceeds of fraudulently selling Sunbelt's assets totaled $4,044,475. In this civil matter, Sunbelt now moves for summary judgment against Defendants Guzman and Second Life on

2

Sunbelt's theft and embezzlement, unjust enrichment, fraud, conversion, North Carolina Unfair and Deceptive Trade Practices Act, North Carolina RICO, and Federal RICO causes of action.

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)); *see United States, f/u/b Mod. Mosaic, LTD v. Turner Constr. Co.*, *et al.*, 946 F.3d 201, 206 (4th Cir. 2019).

A factual dispute is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "A fact is material if it might affect the outcome of the suit under the governing law." *Vannoy v. Federal Rsrv. Bank of Richmond*, 827 F.3d 296, 300 (4th Cir. 2016) (quoting *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013)).

The party seeking summary judgment bears the initial burden of demonstrating the lack of a genuine issue of material fact through citations to the pleadings, depositions, answers to interrogatories, admissions, or affidavits in the record. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). "The burden on the moving party may be discharged by 'showing' ... an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial," *Id*. at 322 n.3. The nonmoving party may not rely on mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. *Id*. at 324.

In determining whether summary judgment is appropriate, "courts must view the evidence in the light most favorable to the nonmoving party and refrain from weigh[ing] the evidence or mak[ing] credibility determinations." *Variety Stores,* 888 F.3d at 659 (internal quotation marks omitted) (quoting *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017)); *see Modern Mosaic* at *2. "Summary judgment cannot be granted merely because the court believes that the movant will prevail if the action is tried on the merits." *Jacobs v. N.C. Admin. Off. of the Courts*, 780 F.3d 562, 568-69 (4th Cir. 2015) (quoting 10A Charles Alan Wright & Arthur R. Miller et al., Federal Practice & Procedure § 2728 (3d ed.1998)).

However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (internal citations omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. The mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. *Id*. If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Id*. at 249-50.

In the end, the question posed by a summary judgment motion is whether the evidence as applied to the governing legal rules "is so one-sided that one party must prevail as a matter of law." *Id*. at 252.

### III. DISCUSSION

As noted above, the related criminal litigation has been resolved. Consequently, many of the material facts have already been established, and Guzman is precluded from disputing them. *See U.S. Commodity Futures Trading Comm'n v. OTC Invs. LLC*, 2018 WL 491013, at *4

4

(W.D.N.C. Jan. 19, 2018) (a guilty plea "in a criminal matter can prevent a party from re-litigating the same issues in a subsequent civil proceeding," particularly where "[t]he criminal fraudulent scheme to which [the defendant] pled guilty is the same fraudulent scheme that is alleged" in the civil matter); *see also SEC v. Farkas,* 557 F. App'x 204, 206 (4th Cir. 2014) (guilty verdict in criminal securities fraud case collaterally estopped the defendant from denying liability for civil securities fraud).

    A.    *Count One: Theft and Embezzlement under N.C. Gen. Stat. §1-538.2*

To prove theft and embezzlement under North Carolina law a plaintiff must show: (1) the defendant, older than 16, acted as an agent or fiduciary for his principal, (2) he received money or valuable property of his principal in the course of his employment and through his fiduciary relationship, and (3) he fraudulently or knowingly and willfully misappropriated or converted to his own use the money or valuable property of his principal which he had received in a fiduciary capacity. *See In re Mason*, 2017 WL 1628889, at *4 (W.D.N.C. May 1, 2017) (citing N.C. Gen. Stat. §14-90; *State v. Parker*, 756 S.E.2d 122, 124 (N.C. Ct. App. 2014)).

Here, all three elements are satisfied. Guzman was undisputedly over the age of 16 and was an agent of Sunbelt. Sunbelt entrusted Guzman with its equipment, something of significant value, and instructed him to dispose of it appropriately. Further, in his guilty plea Guzman admitted to swindling Sunbelt out of $4,044,475 "through the fraudulent sales of approximately 398 assets, arranging for the fraudulent proceeds to be transferred to a bank account in the name of Second Life, which he…controlled." (*See* Case No. 5:21-CR-31 Doc. No. 4 ¶12). Sunbelt is therefore entitled to summary judgment against Guzman on Count One, theft and embezzlement in violation of N.C. Gen. Stat. §1-538.2.

B.     *Count Two: Unjust Enrichment*

Unjust enrichment "was devised by equity to exact the return of or payment for" a measurable benefit "where it would be unfair for the recipient to retain [it] without the contributor being repaid or compensated." *Mountain Land Props., Inc. v. Lovell*, 46 F. Supp. 3d 609, 629 (W.D.N.C. 2014). The elements of unjust enrichment are: "(1) a measurable benefit conferred on defendant; (2) that the defendant consciously accepted; and (3) the benefit was not conferred on the defendant officiously or gratuitously." *Id.*

Guzman received two measurable benefits during this scheme. First, when Sunbelt provided him with access to valuable construction equipment and second, when he deposited the proceeds from selling Sunbelt's equipment into his accounts. (*See* Case No. 5:21-CR-31 Doc. No. 4 ¶2). Even though the proceeds were from a third party, bidadoo, North Carolina law does not require the plaintiff to directly confer the benefit on the defendant to recover for unjust enrichment. *See New Prime, Inc. v. Harris Transp. Co.*, 729 S.E.2d 732, 743-744 (N.C. App. 2012) (citing the Restatement (Third) of Restitution and Unjust Enrichment § 48, the court noted that "if a third person makes a payment to the defendant to which (as between claimant and defendant) the claimant has a better legal or equitable right, the claimant is entitled to restitution from the defendant as necessary to prevent unjust enrichment.")).

Guzman consciously accepted the equipment, created a fraudulent company to sell this equipment, and consciously kept the proceeds from the sales. (*See* Case No. 5:21 CR-31 Doc. No. 4 at ¶10g). And finally, the benefits were not conferred officiously or graciously. Sunbelt terminated Guzman upon discovering this deception. *Id*. ¶15. As a result, Sunbelt is entitled to summary judgment on Count Two, Unjust Enrichment.

C. *Count Three: Fraud*

North Carolina law defines fraud as: "(1) a false representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *Byrd v. Johnny F. Smith Truck & Dragline Serv., Inc.*, 2006 WL 8438437, at *2 (E.D.N.C. Aug. 28, 2006) (citing *Rowan Cnty. Bd. of Educ. v. U.S. Gypsum Co.*, 332 N.C. 1, 17 (1992)). As discussed above, Guzman plead guilty to fraud and is thus estopped from denying it in this subsequent civil matter. *Byrd*, 2006 WL 8438437, at *3 (granting summary judgment on fraud claim where defendant's involvement in fraud "was clearly a necessary element of the prior plea agreement," meaning that defendant's "prior admissions are therefore binding" as evidence of fraudulent conduct).

Guzman made several false representations and concealments of material fact that were reasonably calculated to deceive Sunbelt. These false representations included: (1) manipulating serial numbers for certain assets in Sunbelt's system to make it appear that the assets had been previously sold by Sunbelt, when the assets still belonged to Sunbelt when bidadoo auctioned them (*See* Case No. 5:21-CR-31 Doc. No. 4 ¶11a); (2) manipulating Sunbelt's records to make it appear that certain assets had been written off the books when they had not been junked and still belonged to Sunbelt when bidadoo auctioned them *Id.* ¶11b; and (3) manipulating credit remittances from equipment manufacturers and trade package partners, by adding or dropping assets from spreadsheets, but ensuring the dollar value remained the same, so that while the assets listed may differ, the credit shown would match if someone looked at the dollar amount *Id.* ¶11c. There can be no doubt that Guzman intended to deceive Sunbelt by these actions. *Id.* ¶ 1.

Sunbelt was undeniably deceived when Guzman forged the internal company records to hide the sales of assets because it did not discover his scheme for almost a year. *Id.* ¶¶1, 11, 13.

7

Lastly, Sunbelt was damaged when Guzman redirected the $4,044,475 in proceeds, rightfully belonging to Sunbelt, to his bank accounts. *Id.* ¶12. In sum, as admitted in Guzman's guilty plea, there are no issues of material fact related to the claim against him for fraud, and Sunbelt is entitled to judgment as a matter of law.

    D.    *Count Five: Conversion*

Conversion is the "unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights." *Amazon Logistics, Inc. v. Un4Given Transp*., Inc., 2020 WL 4505536, at *2 (W.D.N.C. Aug. 5, 2020) (quoting *White v. Consol. Plan., Inc*., 603 S.E.2d 147, 165 (N.C. Ct. App. 2004)). The two essential elements of a conversion claim are "ownership in the plaintiff and wrongful possession or conversion by the defendant." *Id*. These elements are easily met here.

Guzman admitted in his plea that he: (1) misrepresented that 398 pieces of equipment owned by Sunbelt, belonged to Second Life; (2) arranged for the sale of these assets; and (3) directed the $4,044,475 from the sales of the equipment to bank accounts that he controlled. (*See* Case No. 5:21-CR-31 Doc. No. 4 ¶¶1, 9, 10g, 12); *see United States v. Riggs*, 2020 WL 1528413, at *2 (E.D.N.C. Mar. 30, 2020) (granting summary judgment for plaintiff on conversion claim where "[b]y selling the . . . tractor and the GMC truck . . . defendants deprived [plaintiff] of its ownership interest in the pledged collateral," constituting "wrongful exclusion of plaintiff's ownership rights" and entitling plaintiff to restitution). Consequently, there is no dispute as to the material facts and Sunbelt is entitled to summary judgment on its conversion claim.

    I.    <u>Punitive Damages</u>

Punitive damages may be awarded to "punish a defendant for egregiously wrongful acts and to deter the defendant and others from committing similar wrongful acts." N.C. Gen. Stat. §

1D-1. These damages are available if the plaintiff proves by clear and convincing evidence that fraud, malice, or willful or wanton conduct was present. N.C. Gen. Stat. § 1D-15(a)-(b). Punitive damages may be awarded only if "that person participated in the conduct constituting the aggravating factor giving rise to the punitive damages, or if, in the case of a corporation, the officers, directors, or managers of the corporation participated in or condoned the conduct constituting the aggravating factor giving rise to punitive damages." N.C. Gen. Stat. § 1D-15(c). Guzman has admitted that he participated in fraud leading to Sunbelt losing $4,044,475.

North Carolina law provides that the award of punitive damages should bear "a rational relationship to the sum necessary to punish defendants for their egregiously wrong acts and to deter Defendants and others from committing similar wrongful acts, "with a statutory maximum of $250,000 or three times the compensatory damages, whichever is greater. *See Slattery v. AppyCity, LLC,* 2021 WL 1124059, at *11 (N.C. Bus. Ct. Mar. 24, 2021) (citing N.C. Gen. Stat. § 1D-25). When determining a punitive damages award the Court is required to consider the defendant's ability to pay. *See* N.C. Gen. Stat. § 1D-35(2)(i). Here, while the egregious nature of Guzman's fraud is undisputed, his ability to pay the maximum award is doubtful. As a result, Sunbelt is entitled to an award of $1,000,000 in punitive damages against Guzman.[1]

### E. *Count Six: Unfair and Deceptive Trade Practices*

The North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA") makes unlawful unfair or deceptive acts or practices in or affecting commerce that proximately injures a plaintiff. *See Shepard v. Bonita Vista Properties, L.P.*, 664 S.E.2d 388, 395 (N.C. Ct. App. 2008) (citing

---

[1] While Plaintiff is entitled to punitive damages, the Court will not award them because Plaintiff has a right to treble damages under the North Carolina UDTPA. *See Atl. Purchasers, Inc. v. Aircraft Sales, Inc.*, 705 F.2d 712, 716 n.4 (4th Cir. 1983) (expressing doubt that the North Carolina courts would uphold an award of punitive damages and statutory treble damages because the remedies are "overlapping.").

N.C. Gen. Stat. § 75-1.1). An act is deceptive "if it has a tendency or capacity to deceive" and unfair if it "offends established public policy" or is "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Marshall v. Miller*, 276 S.E.2d 397, 403 (N.C. 1981).

Commerce is defined as "all business activities." N.C. Gen. Stat. § 75-1.1(b). North Carolina courts have interpreted business activities broadly. *See Bhatti v. Buckland*, 400 S.E.2d 440, 444 (N.C. 1991). Business activities is defined as "the manner in which businesses conduct their regular, day-today activities, or affairs, such as the purchase and sale of goods, or whatever other activities the business regularly engages in and for which it is organized." *Sara Lee Corp. v. Carter*, 519 S.E.2d 308, 311 (N.C. 1999).

As discussed above and admitted in the related criminal matter, Guzman has committed fraud. Under North Carolina law, "proof of fraud would necessarily constitute a violation of the prohibition against unfair and deceptive acts." *Bhatti*, 400 S.E.2d at 443 ("Because the presence of fraud is undisputed, defendant's acts were 'unfair or deceptive.'"). The only remaining question is therefore whether his actions affected commerce. *Id*. Irrefutably, his fraudulent actions, that resulted in the sale of $4,044,475 worth of equipment, constitute commerce. (*See* Case No. 5:21-CR-31 Doc. No. 4 ¶12). Thus, Sunbelt is entitled to summary judgment on its UDTPA claim under N.C. Gen. Stat. §75-1.1. Further, once a violation of Chapter 75 is established, "treble damages must be awarded." *Bhatti*, 400 S.E.2d at 442 (citing *Pinehurst, Inc. v. O'Leary Bros. Realty*, 79 N.C. App. 51, 61, 338 S.E.2d 918, 924 ("damages assessed pursuant to G.S. Sec. 75-1.1 are trebled automatically")). Sunbelt is thus entitled to judgment against M. Guzman for $12,133,425.

I. <u>Attorneys' fees</u>

North Carolina law permits an award of attorneys' fees upon a finding that "[t]he party charged with the violation has willfully engaged in the act or practice, and there was an

10

Case 5:20-cv-00070-KDB-DSC   Document 137   Filed 03/14/22   Page 10 of 13

unwarranted refusal by such party to fully resolve the matter which constitutes the basis of such suit." N.C. Gen. Stat. §75-16.1. Guzman has not agreed to surrender anything to Sunbelt. Guzman entered a plea agreement with the United States, agreeing to forfeit some assets to the United States, but not to Sunbelt (*See* Case No. 5:21-CR-31 Doc. No. 18). Moreover, after his termination Guzman continued to spend money that rightfully belonged to Sunbelt even though he knew his scheme had been discovered. (*See* Case No. 5:21-CR-31 Doc. No. 4 ¶¶13-16). These actions are sufficient for the Court to assess Sunbelt's attorneys' fees against Guzman.

    F.    *Count Seven: North Carolina RICO claim*

To state a claim under the North Carolina Racketeer Influenced and Corrupt Organizations Act a plaintiff must allege (1) an injury or damage to his business or property (2) that resulted from two or more acts of organized unlawful activity or conduct, (3) one of which is something other than mail fraud, wire fraud, or fraud in the sale of securities, (4) that resulted in a pecuniary gain to the defendant. *See In re Bostic Const., Inc*., 2010, 435 B.R. 46 (Bankr. M.D.N.C. 2010); N.C. Gen. Stat. § 75D-4(a)(1).

Sunbelt lost $4,044,475 when Guzman illegally sold their assets. This loss was the direct result of Guzman and his wife's pattern of racketeering activity, wire fraud and money laundering. (*See* Case No. 5:21-CR-31 Doc. No. 4 ¶¶9, 18). This pattern of racketeering activity included an act besides mail, wire, or securities fraud – money laundering. *Id*. ¶18. This pattern sought to acquire Sunbelt's property and to sell it at auction for pecuniary gain, which was then transferred into various accounts Guzman controlled. *Id*. ¶12. Therefore, summary judgment will be granted to Sunbelt on their North Carolina RICO claim.

    F.    *Count Eight: Federal RICO claim*

The Racketeer Influenced and Corrupt Organizations Act "creates civil liability for those who engage in a pattern of racketeering activity." *GE Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 548 (4th Cir. 2011) (citing 18 U.S.C. §§ 1962, 1964). 18 U.S.C. §1964 creates a cause of action for "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. §1962]." The elements of a RICO claim under 18 U.S.C. § 1962(c) are (1) the conducting; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity. *See Whitney, Bradley & Brown, Inc. v. Kammermann*, 436 F. App'x 257, 258 (4th Cir. 2011). A RICO enterprise comprises "any individual, partnership, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Racketeering activity is defined as any act or thread involving specified state or federal crimes, which include mail and wire fraud, while a "pattern" of such racketeering activity requires at least two predicate acts committed within a 10-year period. *Southwood v. Credit Card Sol.,* No. 7:09-CV-00081-F, 2016 WL 8710985, at *9 (E.D.N.C. Feb. 26, 2016), *report and recommendation adopted sub nom. Southwood v. CCDN, LLC,* No. 7:09-CV-183-F, 2016 WL 1389596 (E.D.N.C. Apr. 7, 2016). Finally, a plaintiff must establish proximate causation, which requires "some direct relation between the injury asserted and the injurious conduct alleged." *City of New York v. Gordon,* 155 F. Supp. 3d 411, 425 (S.D.N.Y. 2015) (granting summary judgment for plaintiff on RICO claim and finding proximate causation was established where the scheme "was designed to cause the very injury the [plaintiff] suffered").

Undisputedly, the predicate acts were committed because Guzman admitted wiring fraud and money laundering in his guilty plea. (*See* Case No. 5:21-CR-31 Doc. No. 4). Guzman and his wife participated in wire fraud from July 2019 to April 2020 and money laundering from September 2019 to November 2020 – these multiple predicate acts were committed within a 10-

12

year period and thus constitute a pattern of racketeering activity under RICO. (*See* Case No. 5:21-CR-31 Doc. No. 4 ¶¶9, 18). Finally, the loss of $4,044,475 is a measurable injury to Sunbelt and resulted directly from Guzman's pattern of racketeering activity. *Id.* ¶12. Thus, Sunbelt is entitled to summary judgment on its federal RICO claim.

## I.  ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. Plaintiff's Motion for Partial Summary Judgment (Doc. No. 127) is **GRANTED;**
2. Plaintiff is awarded $4,044,475 in compensatory damages, trebled for a total award of $12,133,425 under N.C. Gen. Stat. 75-1.1;
3. Plaintiff is also awarded reasonable attorneys' fees pursuant to N.C. Gen. Stat. §75-16.1; and
4. This case shall proceed to trial on the merits on the remaining claims in the absence of a voluntary resolution of the dispute among the parties.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: March 14, 2022

Kenneth D. Bell
United States District Judge