UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION

Case No. 5:20-CV-0070-KDB-DSC

| | |
|---|---|
| SUNBELT RENTALS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL GUZMAN and SECOND LIFE EQUIPMENT, LLC<br><br>Defendants. | **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT** |

Plaintiff Sunbelt Rentals, Inc. ("Sunbelt") is entitled to default judgment pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure against defendant Second Life Equipment LLC ("Second Life") on Sunbelt's Verified Complaint [Doc. 1], which asserts claims for unjust enrichment (Claim 2), fraud and fraudulent concealment (Claims 3 and 4), conversion (Claim 5), unfair and deceptive trade practices (Claim 6), and violation of the North Carolina and federal RICO acts (Claims 7 and 8). Sunbelt seeks actual damages in the amount of $4,044,475, as well as punitive damages or treble damages, attorneys' fees, costs, and interest.

## BACKGROUND

The established facts relevant to the claims in this civil case and in the related criminal case, *United States v. Michael R. Guzman*, Case No. 5:21-CR-31, in this Court ("the Criminal Action")[1], in which Michael Guzman ("M. Guzman") pled guilty

[1] References to the pleadings in the docket of the Criminal Action are abbreviated "Crim. Doc."

PPAB 6700257v5

to counts of wire fraud and money laundering as part of the same fraudulent scheme at issue here are:

Sunbelt is a rental company offering various products, including but not limited to construction equipment and industrial tools. [Doc. 1 ¶12; Doc. 13 ¶12] Sunbelt hired M. Guzman in 2008, and on May 23, 2016, Sunbelt promoted him to the position of Manager of Fleet Operations. [Doc. 1 ¶¶8-9; Doc. 12 ¶¶8-9; Doc. 13 ¶¶8-9] In this role, M. Guzman's duties included disposal of aged equipment, including through third party auction houses. [Doc. 1 ¶¶12-13]

Second Life is a company was formed by M. Guzman and Jessica Guzman ("J. Guzman") as a purported purchaser and reseller of used equipment. [*Id.* ¶¶15, 37]

At least as of June 2019 through May 2020, M. Guzman implemented a scheme to defraud Sunbelt by selling Sunbelt's assets through Second Life and another shell company, All Seasons Sales and Service. [*Id.* ¶¶15, 21-24, 18-38] bidadoo is an online auction house that buys and sells used and heavy construction equipment, through which Sunbelt had disposed of assets. [*Id.* ¶¶26-27] To execute the fraudulent scheme, defendants sold Sunbelt's equipment using bidadoo's online auction sales portal for the benefit of defendants. [*Id.* ¶¶28-35] Defendants caused assets belonging to Sunbelt to be loaded on Second Life's customer portal with bidadoo, which assets were sold by bidadoo purportedly for Second Life. [*Id.* ¶¶28-38]

Defendants caused the proceeds of the sales from bidadoo to be transferred to a Wells Fargo account the name of Second Life (the "Second Life Account"). [*Id.* ¶¶32-34]

Defendants, through M. Guzman, concealed the fraudulent scheme from Sunbelt by manipulating internal records. [*Id.* ¶¶39-56]

The defendants' proceeds of fraudulently selling Sunbelt's assets for Defendants' benefit totaled $4,044,475, which amount properly belongs to Sunbelt, constituting actual damages to Sunbelt in the amount of $4,044,475. [Doc. 1 ¶66 ("Defendants defrauded Sunbelt in excess of $4,000,000."); Crim. Doc. 18 ¶1; Crim. Doc. 4 ¶19] Sunbelt has agreed that it will not contest $4,044,475 as the amount of actual damages attributable to defendants' scheme. [Doc. 138]

Sunbelt instituted this civil action against Defendants M. Guzman, J. Guzman and Second Life on May 29, 2020. [Doc. 1] After its counsel withdrew, this Court ordered Second Life to obtain substitute counsel within thirty days of September 7, 2021. [Doc. 91] Second Life failed to do so. Accordingly, Sunbelt moved for Entry of Default against Second Life, which the Clerk granted on November 23, 2021. [Docs. 105, 107]

Sunbelt and J. Guzman are parties to a Consent Judgment entered by this Court on January 27, 2022. [Doc. 130] Sunbelt has filed a Motion for Partial Summary Judgment with respect to M. Guzman, which is pending. [Doc. 126]

## ARGUMENT

Sunbelt seeks punitive damages or treble damages, attorneys' fees and costs, and therefore Sunbelt is applying to the Court for default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2).

Second Life had its default entered based on its failure to obtain substitute counsel as ordered by this Court, and thus, failing to defend itself in this action. [Docs.

105, 107] As this Court has held, failure to retain counsel also supports the entry of default judgment. *See, e.g., Herrmann Int'l, Inc. v. Herrmann Int'l Eur.*, No. 1:17-CV-0073-MR, 2021 WL 861712 (W.D.N.C. Mar. 8, 2021) (entering default judgment when corporate defendants failed to retain new counsel and finding plaintiff's allegations were well-pled); *Inspirational Network, Inc. v. TMH Telemedia Services Ltd.,* Civil No. 3:10-CV-110-RJC-DSC, 2011 WL 754956 (W.D.N.C. Feb. 1, 2011) (recommending the district court enter default judgment when corporate defendant failed to retain new counsel after former counsel withdrew), *report and recommendation adopted*, 2011 WL 765674 (W.D.N.C. Feb. 24, 2011); *Anderton v. Facetglas, Inc.,* 896 F.2d 1366 (1990) (entering default judgment when the corporate defendant failed to appear for depositions after counsel withdrew). Similarly in this case, despite prior appearances and attempts to defend, Sunbelt is entitled to default judgment against Second Life.

Additionally, upon the entry of default, the defaulted party is deemed to have admitted all well-pleaded allegations of fact contained in the complaint. *J & J Sports Prods., Inc. v. Romenski*, 845 F. Supp. 2d 703, 705 (W.D.N.C. 2012). The admitted allegations supporting each claim against Second Life are set forth below.

## I. Second Life is the Alter Ego of Michael Guzman.

At all times relevant M. Guzman completely dominated the affairs of Second Life such that Second Life did not have a separate mind, will, or existence of its own. [Doc. 1 ¶138] M. Guzman used and operated Second Life as a mere instrumentality and as a façade for his fraudulent scheme. [Doc. 1 ¶139] M. Guzman used his control of Second Life to commit a fraud or wrong related to the sale of Sunbelt's assets for defendants' benefit. [Doc. 1 ¶140] M. Guzman's control and breach of duty

proximately caused Sunbelt damages of $4,044,475. [Doc. 1 ¶¶138-44; Doc. 138; Crim. Doc. 18 ¶1; Crim. Doc. 4 ¶19] M. Guzman is the alter ego of Second Life and thereby they are liable to the same extent as the other for all the claims asserted in this action. [Doc. 1 ¶144]; *Estate of Hurst v. Moorehead I, LLC*, 748 S.E.2d 568, 573 (2013); *Glenn v. Wagner*, 313 N.C. 450, 454, 329 S.E.2d 326, 330 (1985).

## II. Second Life owes Sunbelt $4,044,475 for unjust enrichment.

The elements of an unjust enrichment claim are: "(1) a measurable benefit conferred on defendant; (2) that the defendant consciously accepted; and (3) the benefit was not conferred on the defendant officiously or gratuitously." *Mountain Land Props., Inc. v. Lovell*, 46 F. Supp.3d 609, 629 (W.D.N.C. 2014).

Second Life had no ownership interest in Sunbelt's equipment. [Doc. 1 ¶20] Second Life provided information to bidadoo about Sunbelt's equipment, which bidadoo auctioned to third parties. [*Id.* ¶21] Second Life consciously received the benefit of the proceeds for the sale of Sunbelt's assets, which were diverted to Second Life's bank account. [*Id.* ¶¶30, 32-33, 76] Although these proceeds came through a third party, bidadoo, North Carolina law does not require the plaintiff confer a direct benefit on the defendant to recover for unjust enrichment. *New Prime, Inc. v. Harris Transp. Co.*, 729 S.E.2d 732, at *4 (N.C. App. 2012). Citing the Restatement (Third) of Restitution and Unjust Enrichment § 48, the N.C. Court of Appeals noted that "if a third person makes a payment to the defendant to which (as between claimant and defendant) the claimant has a better legal or equitable right, the claimant is entitled to restitution from the defendant as necessary to prevent unjust enrichment." The undisputed facts are that Sunbelt had exclusive rights in the proceeds of the sale of

any of Sunbelt's assets, and is entitled to restitution from Second Life. [Doc. 1 ¶¶30, 35, 38]

The benefit was not conferred upon Second Life officiously or graciously; indeed, Sunbelt was entirely unaware that Second Life provided a list of Sunbelt's assets to bidadoo, which were being sold by bidadoo with the proceeds being remitted to Second Life's account. [*Id.* ¶¶35,38]

Second Life was unjustly enriched at Sunbelt's expense in the amount of its proceeds of $4,044,475. [*Id.* ¶¶76-79; Doc. 138; Crim. Doc. 18 ¶1; Crim. Doc. 4 ¶19]

## III. Second Life committed fraud and fraudulent concealment.

Fraud is: "(1) a false representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *Byrd v. Johnny F. Smith Truck & Dragline Service, Inc.*, 2006 WL 8438437, at *2 (E.D.N.C. Aug. 28, 2006). By default, Second Life has admitted that it was formed and conducted business for the purpose of defrauding Sunbelt by misrepresenting or concealing that Sunbelt sold its equipment to Second Life, which was acting as a broker for disposing equipment. [Doc. 1 ¶¶18, 21, 28, 37]

With respect to the first element, Second Life admits that it has made numerous false representations and concealments of material fact to Sunbelt. [Doc. 1 ¶¶63-67, 82-86] In fact, Second Life was created for the purpose of misrepresenting itself as a broker for disposing of Sunbelt's equipment. [Doc. 1 ¶37] Second Life admits that M. Guzman, on its behalf, manipulated Sunbelt's financial records so the assets Second Life sold through bidadoo for the defendants' benefit were recorded as

being sold to certain other Sunbelt vendors as part of a trade package. [*Id.* ¶¶39-42, 63-65, 83] Additionally, M. Guzman, on Second Life's behalf, fraudulently issued credits to Sunbelt vendors, created false vendor accounts, and changed equipment asset numbers and serial numbers to hide defendants' scheme. [*Id.* ¶¶39-56, 64-65, 83] These misrepresentations were material as Sunbelt was led to believe its accounting records reflected equipment sold on its behalf when in fact, the assets had been sold for the benefit of defendants. [*Id.* ¶83]

With respect to the second and third elements, Second Life has admitted that its false representations and concealments were reasonably calculated to deceive Sunbelt and were made with the intent of deceiving Sunbelt. [*Id.* ¶86]

With respect to the fourth element, Sunbelt was in fact deceived by Second Life's actions. Sunbelt reasonably believed that its used equipment was being sold on behalf of Sunbelt and that its financial records were accurate, which in fact was false. [*Id.* ¶¶87-88]¶

Finally, Second Life diverted the $4,044,475 in proceeds rightfully belonging to Sunbelt to itself causing further harm to Sunbelt. [*Id.* ¶89; Doc. 138; Crim. Doc. 4 ¶12]

Further, as noted above, Second Life is the alter ego of M. Guzman, and is thereby liable for M. Guzman's actions. M. Guzman has made a knowing and voluntary guilty plea based on his fraudulent scheme, through which he admitted that Second Life was "used in his fraudulent scheme as a purported purchaser and reseller of used equipment." [Crim. Doc. 4 ¶15] Accordingly, the plea and supporting Factual Basis constitute an admission of all elements and material facts of those

charges, and Second Life is estopped from denying fraud in this case. *Byrd*, 2006 WL 8438437, at *3 (granting summary judgment on fraud claim where defendant's involvement in fraud "was clearly a necessary element of the prior plea agreement," meaning that defendant's "prior admissions are therefore binding" as evidence of fraudulent conduct).

For these reasons, Sunbelt is entitled to default judgment with respect to the fraud and fraudulent concealment claims against Second Life.

## IV. Sunbelt is entitled to default judgment on its fifth claim for relief against Second Life for conversion.

Conversion is the "unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights." *Amazon Logistics, Inc. v. Un4Given Transp., Inc.*, 2020 WL 4505536, at *2 (W.D.N.C. Aug. 5, 2020) (*quoting White v. Consol. Planning, Inc.*, 603 S.E.2d 147, 165 (N.C. Ct. App. 2004)). The claim of conversion covers movable property, including money. *Dugan v. Schamens*, 2017 WL 4366747, at *6 (W.D.N.C. Oct. 22, 2017) (*citing Gadson v. Toney*, 316 S.E.2d 320, 322 (N.C. Ct. App. 1984)). The two essential elements of a conversion claim are "ownership in the plaintiff and wrongful possession or conversion by the defendant." *Amazon*, 2020 WL 4505536 at *2 (*quoting Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC*, 723 S.E.2d 744, 747 (N.C. 2012)).

Second Life misrepresented to bidadoo that equipment owned by Sunbelt, belonged to Second Life. [Doc. 1 ¶¶30-32] Second Life provided information to bidadoo about the equipment, which bidadoo sold, and also directed bidadoo to deposit the proceeds into Second Life's bank account. [*Id.* ¶¶32-34, 102-04] ] Through this

scheme, Second Life, without authorization, assumed and exercised the right of ownership over Sunbelt's equipment and the proceeds derived therefrom, to the exclusion of and inconsistent with Sunbelt's rights. [*Id.* ¶105] As a direct and proximate result of Second Life's conversion as described, Sunbelt has been damaged by Second Life. [*Id.* ¶106]

The measure of damages for conversion is "the fair market value of the converted property at the time of the conversion, plus interest." *Amazon*, 2020 WL 2505536 , at *3 (*quoting Bartlett Milling Co., L.P. v. Walnut Grove Auction & Realty Co.*, 665 S.E.2d 478, 485 (N.C. Ct. App. 2008)). Here, the assets were sold through Sunbelt's usual channel of disposing of used assets, an auction platform, which is an open market. [Doc. 1 ¶27] Accordingly, Sunbelt is entitled to the amount Second Life realized from these sales, $4,044,475, plus interest. [Doc. 1; Doc. 138; Crim. Doc. 18 ¶1; Crim. Doc. 4 ¶19]

## V. Sunbelt is entitled to punitive damages from Second Life.

Punitive damages may be awarded to "punish a defendant for egregiously wrongful acts and to deter the defendant and others from committing similar wrongful acts." N.C. Gen. Stat. § 1D-1. These damages are available if the plaintiff proves liability for compensatory damages and by clear and convincing evidence that fraud, malice or willful or wanton conduct was present. N.C. Gen. Stat. § 1D-15(a)-(b). Punitive damages may not be awarded unless "that person participated in the conduct constituting the aggravating factor giving rise to the punitive damages, or if, in the case of a corporation, the officers, directors, or managers of the corporation

participated in or condoned the conduct constituting the aggravating factor giving rise to punitive damages." N.C. Gen. Stat. § 1D-15(c).

Second Life has admitted, through default, that it participated in fraud resulting in a compensatory loss to Sunbelt of $4,044,475, which gives rise to punitive damages. *See Slattery v. AppyCity, LLC*, 2021 WL 1124059, at *11 (N.C. Bus. Ct. Mar. 24, 2021) (awarding punitive damages on summary judgment after holding the plaintiff was entitled to finding of fraud based on the defendants' scheme to defraud the plaintiff of his invested funds through use of a sham company they controlled).

North Carolina law provides that the award of punitive damages should "bear[] a rational relationship to the sum necessary to punish defendants for their egregiously wrong acts and to deter Defendants and others from committing similar wrongful acts", with a statutory maximum of the greater of $250,000 or three times the compensatory damages. *Id.* (citing N.C. Gen. Stat. § 1D-25). Here, the maximum award is appropriate. Accordingly, Sunbelt is entitled to an award of $12,133,425 in punitive damages against M. Guzman.

## VI. Sunbelt is entitled to default judgment on its sixth claim for relief because Second Life committed unfair and deceptive trade practices, and Sunbelt is entitled to treble damages and attorneys' fees.

The UDTPA "declares unlawful unfair or deceptive acts or practices in or affecting commerce" that proximately injures a plaintiff. *Shepard v. Bonita Vista Properties, L.P.*, 664 S.E.2d 388, 394-95 (N.C. Ct. App. 2008) (citing N.C. Gen. Stat. § 75-1.1(a)). The statute defines "commerce" to include "all business activities." N.C. Gen. Stat. § 75-1.1(b). The North Carolina courts have interpreted this term broadly: "The Act is directed toward maintaining ethical standards in dealings between

persons engaged in business and to promote good faith at all levels of commerce." *Bhatti v. Buckland*, 400 S.E.2d 440, 444 (*quoting United Roasters, Inc. v. Colgate-Palmolive Co.*, 485 F.Supp. 1041, 1046 (E.D.N.C. 1979)). An act is deceptive "if it has a tendency or capacity to deceive" and unfair if it "offends established public policy" or is "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Marshall v. Miller*, 276 S.E.2d 397, 403 (N.C. 1981). Whether an act is unfair or deceptive is not a question of fact for the jury, but rather a question of law for the Court. *Bernard v. Central Carolina Truck Sales, Inc.*, 314 S.E.2d 582, 584 (N.C. Ct. App. 1984) In making this determination, the bad faith of the defendant is irrelevant. *Id.*

In this case, as set forth above, Second Life has admitted fraud. Under North Carolina law, "proof of fraud would necessarily constitute a violation of the prohibition against unfair and deceptive acts." *Bhatti*, 400 S.E.2d at 442-43 ("Because the presence of fraud is undisputed, defendant's acts were 'unfair or deceptive.'").

Second Life admits its fraudulent business operations in the sale of equipment for defendants' benefit constitutes commerce. [Doc. 1 ¶108]

Finally, Second Life admits that the fraud caused damages to Sunbelt in the amount of $4,044,475. [*Id.* ¶¶66, 112; Doc. 138; Crim. Doc. 18 ¶1; Crim. Doc. 4 ¶19] As all of the elements are met, Sunbelt is entitled to summary judgment on its UDTPA claim pursuant to N.C. Gen. Stat. §75-1.1.

Once a violation of Chapter 75 is established, "treble damages must be awarded." *Bhatti*, 400 S.E.2d at 442; N.C. Gen. Stat. §75-16. This Court has previously granted treble damages on default judgment for a UDTPA claim against

a defendant who failed to retain new counsel in contravention of the Court's order to do so. *See Cent. Nat'l Gottesman Inc. v. Nakos Paper Prod. Inc.*, 2021 WL 3562898, at *4 (W.D.N.C. Aug. 11, 2021) (further ordering payment of reasonable attorney's fees and costs); *see also Black v. F & S, LLC*, 2008 WL 5110728, at *5 (W.D.N.C. Dec. 2, 2008) (granting treble damages on UDTPA claim on default judgment and noting further that "the Court is without discretion to decline to treble Plaintiff's award"). Therefore, Sunbelt is entitled to judgment against Second Life for $12,133,425.

There is also ample evidence for the Court to tax Second Life with Sunbelt's attorneys' fees. N.C. Gen. Stat. §75-16.1 permits such an award upon a finding by the presiding judge that "[t]he party charged with the violation has willfully engaged in the act or practice, and there was an unwarranted refusal by such party to fully resolve the matter which constitutes the basis of such suit." Second Life has not agreed to surrender anything to Sunbelt, the victim in this matter.

## VII. Sunbelt is entitled to default judgment on its seventh and eighth claims for relief because Second Life violated North Carolina and federal RICO statutes.

### A. <u>North Carolina RICO</u>

North Carolina's RICO Act forbids engaging in a pattern of racketeering activity or, through a pattern of racketeering activity, acquiring or maintaining "any interest or control of any enterprise, real property, or personal property of any nature." N.C. Gen. Stat. § 75D-4(a)(1).

It is undisputed that Second Life engaged with the other defendants in a pattern of racketeering activity, which includes an act besides mail, wire, or securities fraud – money laundering. [Doc. 1 ¶¶ 33-38, 63-67, 111-26] *See State of N.C. ex rel.*

*Long v. Cooper*, 14 F. Supp. 2d 767, 772 (E.D.N.C. 1996) (citing N.C.G.S. § 75D-8(c)) (finding a "pattern" under the North Carolina Act is defined similarly to federal law, with the exception that at least one predicate act must be something other than mail, wire, or securities fraud).

The pattern of money laundering was designed to acquire property of Sunbelt's in order to sell at auction for illicit profits. [Doc. 1 ¶¶ 28-33] Funds wired from bidadoo to the Second Life account for the benefit of all the defendants. [*Id.* ¶¶ 30-34, 38, 63, 117-25] Therefore, as Second Life has admitted engaging in such activities, Sunbelt is entitled to default judgment on its North Carolina RICO claim.

B. <u>Federal RICO</u>

RICO's civil provision, 18 U.S.C. §1964, provides a cause of action to "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. §1962]." Second Life admits Defendants violated §1962(c), which prohibits any person employed by or associated with an enterprise affecting interstate commerce from "conducting or participating in the conduct of such enterprise's affairs through a pattern of racketeering activity," and § 1962(d), which prohibits "conspiring to violate any of the provisions of subsections (a), (b), or (c)." 18 U.S.C. § 1962.

An enterprise includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact." *Southwood v. Credit Card Sol.*, 2016 WL 8710985, at *17 (E.D.N.C. Feb. 26, 2016), *report and recommendation adopted sub nom. Southwood v. CCDN, LLC*, 2016 WL 1389596 (E.D.N.C. Apr. 7, 2016). Enterprises are typically characterized by "continuity, unity, shared purpose and identifiable structure." *United States v. Fiel*,

35 F.3d 997, 1003 (4th Cir. 1994). Racketeering activity, in turn, is defined as any act or thread involving specified state or federal crimes, which include mail and wire fraud, while a "pattern" of such racketeering activity requires at least two predicate acts committed within a 10-year period. *Southwood*, 2016 WL 8710985, at *9. Finally, a plaintiff must establish proximate causation, which requires "some direct relation between the injury asserted and the injurious conduct alleged." *City of New York v. Gordon,* 155 F. Supp. 3d 411, 425 (S.D.N.Y. 2015) (granting summary judgment for plaintiff on RICO claim and finding proximate causation was established where the scheme "was designed to cause the very injury the [plaintiff] suffered").

It is not in dispute that predicate acts were committed – wire fraud and money laundering are among the predicate acts forbidden under RICO, and Second Life has already admitted to being a direct participant with the other defendants in both. [Doc. 1 ¶¶ 30-38, 64-65, 129-34] Finally, the loss of $4,044,475 is a measurable injury to Sunbelt and was the direct result of said pattern of racketeering activity. [*Id.* ¶135] As such, Sunbelt is entitled to default judgment on its federal RICO claim against Second Life.

## **CONCLUSION**

For the foregoing reasons, Sunbelt Rentals, Inc. respectfully requests that the Court grant Plaintiff's Motion for Default Judgment, and enter an Order directing that Sunbelt shall recover a judgment from Second Life in the amount of $4,044,475, as well as punitive damages or treble damages, attorneys' fees, costs, interest, and any other such relief that the Court deems proper.

This 15th day of March, 2022.

s/ Jami J. Farris
Jami Jackson Farris (N.C. Bar No. 26915)
Brian S. Cromwell (N.C. Bar No. 23488)
Eric A. Frick (N.C. Bar No. 49212)
Marshall G. Jones, (N.C. Bar No. 53996)
**PARKER POE ADAMS & BERNSTEIN LLP**
620 S Tryon St. Suite 800
Charlotte, NC 28202
Tel: (704) 372-9000
Fax: (704) 334-4706
jamifarris@parkerpoe.com
briancromwell@parkerpoe.com
eriricfrick@parkerpoe.com
marshalljones@parkerpoe.com
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

This is to certify that the foregoing **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION DEFAULT JUDGMENT AGAINST SECOND LIFE EQUIPMENT, LLC** was electronically filed with the Clerk of Court using the CM/ECF system which will automatically send notice of the same, except for as noted below:

**Via U.S. Mail**
Michael R. Guzman
Register Number: 46210-509
FCI Edgefield
Federal Correctional Institution
P.O. Box 725
Edgefield, South Carolina 29824

**Via U.S. Mail**
Second Life Equipment, LLC
Jessica Guzman, President
7954 Bay Pointe Drive
Denver, North Carolina 28037

This 15th day of March, 2022.

s/ Jami J. Farris
Jami J. Farris (N.C. Bar No. 26915)
**PARKER POE ADAMS & BERNSTEIN LLP**
620 S Tryon St., Suite 800
Charlotte, NC 28202
Tel: (704) 372-9000
Fax: (704) 334-4706
jamifarris@parkerpoe.com