IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO. 5:20-CV-00070-KDB-DSC

| | |
|---|---|
| SUNBELT RENTALS, INC., <br><br> Plaintiff, <br><br> v. <br><br> SECOND LIFE EQUIPMENT, LLC, <br><br> Defendant. | ORDER |

**THIS MATTER** is before the Court on Plaintiff's Motion for Default Judgment (Doc. No. 139). The Defendant, who is not represented by counsel, has not responded to the motion; but the Court has still carefully considered the merits of the motion based on the full record. For the reasons discussed below, the Court will **GRANT** the motion and enter a Default Judgment in favor of the Plaintiff.

## I. RELEVANT BACKGROUND

Sunbelt Rentals, Inc., is a rental company offering various products, including construction equipment and industrial tools. In 2008 Sunbelt hired Michael Guzman and in 2016 promoted him to Manager of Fleet Operations. His duties included the disposal of aged equipment, which was often done through third-party auction houses. After his promotion, Guzman created Second Life Equipment, LLC with his wife, Jessica Guzman, and "Eric Dixon." "Eric Dixon" is a fictitious name that Guzman used to help run Second Life. Second Life was allegedly a purchaser and reseller of used equipment.

1

Between June 2019 and May 2020, Guzman engaged in a ruse to defraud Sunbelt by selling its assets through Second Life and another shell company. Guzman used bidadoo, an online auction house, to sell equipment owned by Sunbelt. Guzman, as "Eric Dixon," contacted bidadoo and expressed an interest in selling equipment that he claimed had been sold to Second Life by Sunbelt. When bidadoo contacted Guzman, as a representative of Sunbelt, directly to confirm the sale, he hoodwinked them by confirming "Dixon's" story.

Due to this deception, 398 assets rightfully belonging to Sunbelt were uploaded on Second Life's customer portal with bidadoo and sold. The proceeds were then deposited into a Wells Fargo account controlled by Second Life and the Guzmans. The Guzmans used the proceeds to purchase various properties, vacations, and investments in securities. To conceal this ruse, Guzman manipulated the internal records of Sunbelt. This deceit was achieved by: (1) altering serial numbers for certain equipment in Sunbelt's system to make it appear that the equipment had been previously sold by Sunbelt, even though in reality it remained in Sunbelt's possession; (2) falsifying Sunbelt's records to make it appear that certain equipment had been disposed of or written off the books as junk when the equipment had not in fact been junked and still belonged to Sunbelt; and (3) manipulating credit remittances from equipment manufactures and trade package partners, by adding or dropping equipment from spreadsheets, while ensuring the dollar value remained the same, so that, while the assets listed might be different, the credit shown would match.

In the associated criminal case, *United States v. Michael R. Guzman*, Case No. 5:21-CR-31, Guzman pleaded guilty to counts of wire fraud and money laundering. Guzman further admitted that the proceeds of fraudulently selling Sunbelt's assets totaled $4,044,475.[1]

In this civil matter, Sunbelt now moves for an entry of a default judgment under Rule 55(b)(2) of the Federal Rules of Civil Procedure against defendant Second Life Equipment LLC for its claims of: unjust enrichment (Claim 2); fraud (Claim 3); fraudulent concealment (Claim 4); conversion (Claim 5); unfair and deceptive trade practices (Claim 6); and violation of the North Carolina and federal RICO acts (Claims 7 and 8). (Doc. No. 140).

## II.  LEGAL STANDARD

A motion for default judgment is governed by Rule 55 of the Federal Rules of Civil Procedure. Fed R. Civ. P. 55. Rule 55(b) "authorizes the entry of a default judgment when a Defendant fails 'to plead or otherwise defend' in accordance with the Rules." *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir.1982). A defaulting party is found to admit the factual allegations of the Plaintiff's complaint but is not held to admit conclusions of law or allegations of liability that are not well-pleaded. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). A plaintiff's burden in moving for default judgment is not satisfied by simply pleading facts; the plaintiff's complaint must also state a cognizable claim to which his or her well-pleaded facts provide support and show an entitlement to relief. *Id*.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)); *see*

---

[1] The Court also granted Plaintiff's partial summary judgment motion against Michael Guzman in this civil matter. *See* Doc. No. 137.

3

*United States, f/u/b Mod. Mosaic, LTD v. Turner Constr. Co.*, *et al.*, 946 F.3d 201, 206 (4th Cir. 2019).

A factual dispute is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "A fact is material if it might affect the outcome of the suit under the governing law." *Vannoy v. Federal Rsrv. Bank of Richmond*, 827 F.3d 296, 300 (4th Cir. 2016) (quoting *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013)).

The party seeking summary judgment bears the initial burden of demonstrating the lack of a genuine issue of material fact through citations to the pleadings, depositions, answers to interrogatories, admissions, or affidavits in the record. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). "The burden on the moving party may be discharged by 'showing' ... an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial," *Id*. at 322 n.3. The nonmoving party may not rely on mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. *Id*. at 324.

In determining whether summary judgment is appropriate, "courts must view the evidence in the light most favorable to the nonmoving party and refrain from weigh[ing] the evidence or mak[ing] credibility determinations." *Variety Stores,* 888 F.3d at 659 (internal quotation marks omitted) (quoting *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017)); *see Modern Mosaic* at *2. "Summary judgment cannot be granted merely because the court believes that the movant will prevail if the action is tried on the merits." *Jacobs v. N.C. Admin. Off. of the Courts*,

780 F.3d 562, 568-69 (4th Cir. 2015) (quoting 10A Charles Alan Wright & Arthur R. Miller et al., Federal Practice & Procedure § 2728 (3d ed.1998)).

However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (internal citations omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. The mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. *Id*. If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Id*. at 249-50.

In the end, the question posed by a summary judgment motion is whether the evidence as applied to the governing legal rules "is so one-sided that one party must prevail as a matter of law." *Id*. at 252.

### III. DISCUSSION

Default was entered against Second Life because of its failure to obtain substitute counsel as ordered by this Court. (Doc. No. 105, 107). The failure of a corporation to retain counsel supports the entry of a default judgment. *See e.g.*, *Herrmann Int'l, Inc. v. Herrmann Int'l Eur.,* No. 1:17-CV- 0073-MR, 2021 WL 861712 (W.D.N.C. Mar. 8, 2021) (entering default judgment when corporate defendants failed to retain new counsel). Second Life has therefore defaulted and has admitted all well-pleaded allegations of fact in the complaint. *See J & J Sports Prods., Inc. v. Romenski*, 845 F. Supp. 2d 703, 705 (W.D.N.C. 2012) (citing *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir.2001)).

5

As a threshold issue, Second Life was the alter ego of Michael Guzman. When a "corporation is so operated that it is a mere instrumentality or alter ego of the sole or dominant shareholder…the corporation and the shareholder [are] treated as one and the same person." *Henderson v. Sec. Mortg. & Fin. Co.*, 273 N.C. 253, 260, 160 S.E.2d 39 (1968). Michael Guzman wholly controlled the activities of Second Life and consequently Second Life did not exist outside of being a mere tool of Guzman's fraudulent scheme. (Doc. 1 ¶139). Guzman used his control of Second Life to commit his crimes. *Id.* ¶140. Second Life is therefore the alter ego of Michael Guzman and is liable to the same extent as Guzman. *See Est. of Hurst v. Moorehead I, LLC*, 748 S.E.2d 568, 574 (2013); *Glenn v. Wagner*, 313 N.C. 450, 454, 329 S.E.2d 326, 330 (1985).

### A. Count Two: Unjust Enrichment

Unjust enrichment "was devised by equity to exact the return of or payment for" a measurable benefit "where it would be unfair for the recipient to retain [it] without the contributor being repaid or compensated." *Mountain Land Props., Inc. v. Lovell*, 46 F. Supp. 3d 609, 629 (W.D.N.C. 2014). The elements of unjust enrichment are: "(1) a measurable benefit conferred on defendant; (2) that the defendant consciously accepted; and (3) the benefit was not conferred on the defendant officiously or gratuitously." *Id.* Sunbelt has satisfied all the required elements.

Second Life at no time had any valid ownership interest in Sunbelt's equipment. (Doc. 1 ¶30). Yet Second Life participated in the sale of Sunbelt's equipment, through an online auction house Bidadoo, and consciously received proceeds from the sale of Sunbelt's assets. *Id*. ¶¶ 30, 32-33, 76.[2] Sunbelt undisputedly had exclusive rights over these proceeds. *Id*. ¶¶ 30, 35, 38. This establishes that Second Life consciously received a measurable benefit.

---

[2] Even though the proceeds were from a third party, bidadoo, North Carolina law does not require the plaintiff to directly confer the benefit on the defendant to recover for unjust enrichment. *See*

Lastly, Sunbelt was unaware that Second Life and the Guzmans were engaged in this fraud and that the proceeds were being paid into Second Life's account. *Id.* ¶¶ 35,38. Thus, there can be no argument that the benefit was officiously or graciously given. In sum, Second Life was unjustly enriched at Sunbelt's expense for $4,044,475. As a result, Sunbelt is entitled to summary judgment on Count Two, Unjust Enrichment.

> B.      Count Three: Fraud

North Carolina law defines fraud as: "(1) a false representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *Byrd v. Johnny F. Smith Truck & Dragline Serv., Inc.*, 2006 WL 8438437, at *2 (E.D.N.C. Aug. 28, 2006) (citing *Rowan Cnty. Bd. of Educ. v. U.S. Gypsum Co.*, 332 N.C. 1, 17 (1992)).

Second Life admits that it has made several false representations and concealments of material fact to Sunbelt. (Doc. 1 ¶¶63-67, 82-86). Second Life was expressly created to misrepresent itself as a dealer for the disposing of Sunbelt's equipment. *Id.* ¶37. Second Life admits that Michael Guzman, on its behalf, manipulated Sunbelt's financial records so the assets it sold were recorded as being sold to other Sunbelt vendors as part of a trade package. *Id.* ¶¶39-42, 63-65, 83. Additionally, Guzman, on Second Life's behalf, fraudulently issued credits to Sunbelt vendors, created false vendor accounts, and changed equipment asset numbers and serial numbers to conceal the scheme. *Id.* ¶¶39-56, 64-65, 83. These misrepresentations led Sunbelt to believe that its accounting records reflected equipment sold on its behalf, when in fact, the assets

---

*New Prime, Inc. v. Harris Transp. Co.*, 729 S.E.2d 732, 743-744 (N.C. App. 2012) (citing the Restatement (Third) of Restitution and Unjust Enrichment § 48, the court noted that "if a third person makes a payment to the defendant to which (as between claimant and defendant) the claimant has a better legal or equitable right, the claimant is entitled to restitution from the defendant as necessary to prevent unjust enrichment.")).

had been sold to benefit Second Life and the Guzmans. *Id*. ¶83. Second Life has admitted that its false representations and concealments were reasonably calculated to deceive Sunbelt. *Id*. as ¶86.

Finally, Sunbelt was in fact deceived by Second Life's actions. Sunbelt reasonably believed that its used equipment was being sold on behalf of it and that its financial records were accurate. *Id*. ¶¶87-88. Second Life diverted the $4,044,475 in proceeds rightfully belonging to Sunbelt to its own bank account. *Id*. ¶89; Doc. No. 138; Case No. 5:21-CR-31 Doc. No. 4 ¶12. For these reasons, Sunbelt is entitled to summary judgment on its fraud claim against Second Life.[3]

    C.    *Count Four: Fraudulent Concealment*

Fraudulent concealment is a form of misrepresentation entitling a plaintiff to damages. *Friedland v. Gales*, 131 N.C. App. 802, 807, 509 S.E.2d 793, 797 (1998). The elements of fraudulent concealment are: (1) concealment of a "[past or existing] material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *Hardin v. KCS Int'l., Inc*. 199 N.C. App. 687, 696, 682 S.E.2d 726, 733 (2009).

Again, Second Life has admitted that it made several false representations and concealments of material facts to Sunbelt and that it was expressly created to participate in the Guzman's scheme to dispose of Sunbelt's equipment for personal gain. (Doc. 1 ¶¶ 37, 63-67, 82-86). Further, Michael Guzman, Sunbelt's employee, manipulated Sunbelt's financial records on

---

[3] As noted above, Second Life is the alter ego of Michael Guzman, and is thereby liable for his actions. Guzman has made a knowing and voluntary guilty plea based on his fraudulent scheme, through which he admitted that Second Life was "used in his fraudulent scheme as a purported purchaser and reseller of used equipment." (Case No. 5:21-CR-31 Doc. No 4 ¶15). Accordingly, the plea and supporting Factual Basis constitute an admission of all elements and material facts of those charges, and Second Life is estopped from denying fraud in this case. *Byrd*, 2006 WL 8438437, at *3 (granting summary judgment on fraud claim where defendant's involvement in fraud "was clearly a necessary element of the prior plea agreement," meaning that defendant's "prior admissions are therefore binding" as evidence of fraudulent conduct).

Second Life's behalf. *Id*. ¶¶39-42, 63-65, 83. Second Life diverted the $4,044,475 in proceeds rightfully belonging to Sunbelt into its own bank account. *Id*. ¶89. Accordingly, Sunbelt is entitled to summary judgment on its fraudulent concealment claim against Second Life.

    D.    *Count Five: Conversion*

Conversion is the "unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights." *Amazon Logistics, Inc. v. Un4Given Transp.*, Inc., 2020 WL 4505536, at *2 (W.D.N.C. Aug. 5, 2020) (quoting *White v. Consol. Plan., Inc.*, 603 S.E.2d 147, 165 (N.C. Ct. App. 2004)). The two essential elements of a conversion claim are "ownership in the plaintiff and wrongful possession or conversion by the defendant." *Id*. These elements are straightforwardly met here.

Second Life misrepresented to Bidadoo that the equipment owned by Sunbelt belonged to Second Life. (Doc. 1 ¶¶30-32). Second Life instructed Bidadoo to deposit the proceeds from the sale of Sunbelt's equipment into Second Life's bank account. *Id*. ¶¶32-34, 102-04. Simply put, Second Life, without authorization, assumed and exercised the right of ownership over Sunbelt's equipment and the proceeds derived from their sale, to the exclusion of and inconsistent with Sunbelt's ownership rights. *Id*. ¶105; *see United States v. Riggs*, 2020 WL 1528413, at *2 (E.D.N.C. Mar. 30, 2020) (granting summary judgment for plaintiff on conversion claim where "[b]y selling the . . . tractor and the GMC truck . . . defendants deprived [plaintiff] of its ownership interest in the pledged collateral," constituting "wrongful exclusion of plaintiff's ownership rights" and entitling plaintiff to restitution). Sunbelt is thus entitled to summary judgment on its conversion claim.

    I.    <u>Punitive Damages</u>

Punitive damages may be awarded to "punish a defendant for egregiously wrongful acts and to deter the defendant and others from committing similar wrongful acts." N.C. Gen. Stat. § 1D-1. These damages are available if the plaintiff proves by clear and convincing evidence that fraud, malice, or willful or wanton conduct was present. N.C. Gen. Stat. § 1D-15(a)-(b). Punitive damages may be awarded only if "that person participated in the conduct constituting the aggravating factor giving rise to the punitive damages, or if, in the case of a corporation, the officers, directors, or managers of the corporation participated in or condoned the conduct constituting the aggravating factor giving rise to punitive damages." N.C. Gen. Stat. § 1D-15(c). Second Life has admitted, through default, that it participated in fraud resulting in a loss to Sunbelt of $4,044,475, which gives rise to punitive damages. *See Slattery v. AppyCity*, LLC, 2021 WL 1124059, at *11 (N.C. Bus. Ct. Mar. 24, 2021) (awarding punitive damages on summary judgment after holding the plaintiff was entitled to finding of fraud based on the defendants' scheme to defraud the plaintiff of his invested funds through use of a sham company they controlled).

North Carolina law provides that the award of punitive damages should bear "a rational relationship to the sum necessary to punish defendants for their egregiously wrong acts and to deter Defendants and others from committing similar wrongful acts, with a statutory maximum of $250,000 or three times the compensatory damages, whichever is greater." *See Slattery v. AppyCity, LLC,* 2021 WL 1124059, at *11 (N.C. Bus. Ct. Mar. 24, 2021) (citing N.C. Gen. Stat. § 1D-25). When determining a punitive damages award the Court must consider the defendant's ability to pay. *See* N.C. Gen. Stat. § 1D-35(2)(i). Here, while the egregious nature of Second Life's

fraud is undisputed, its ability to pay the maximum award is doubtful. As a result, Sunbelt is entitled to an award of $1,000,000 in punitive damages against Guzman.[4]

  E.  Count Six: Unfair and Deceptive Trade Practices

The North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA") makes unlawful unfair or deceptive acts or practices in or affecting commerce that proximately injures a plaintiff. *See Shepard v. Bonita Vista Properties, L.P.*, 664 S.E.2d 388, 395 (N.C. Ct. App. 2008) (citing N.C. Gen. Stat. § 75-1.1). An act is deceptive "if it has a tendency or capacity to deceive" and unfair if it "offends established public policy" or is "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Marshall v. Miller*, 276 S.E.2d 397, 403 (N.C. 1981).

Commerce is defined as "all business activities." N.C. Gen. Stat. § 75-1.1(b). North Carolina courts have interpreted business activities broadly. *See Bhatti v. Buckland*, 400 S.E.2d 440, 444 (N.C. 1991). Business activities is defined as "the manner in which businesses conduct their regular, day-today activities, or affairs, such as the purchase and sale of goods, or whatever other activities the business regularly engages in and for which it is organized." *Sara Lee Corp. v. Carter*, 519 S.E.2d 308, 311 (N.C. 1999).

As discussed above, Second Life has committed fraud. Under North Carolina law, "proof of fraud would necessarily constitute a violation of the prohibition against unfair and deceptive acts." *Bhatti*, 400 S.E.2d at 442-43 ("Because the presence of fraud is undisputed, defendant's acts were 'unfair or deceptive.'"). Second Life has also admitted its fraudulent business operations in the sale of equipment for defendants' benefit constitutes commerce. (Doc. No. 1 ¶108). Finally,

---

[4] While Plaintiff is entitled to punitive damages, the Court will not award them because Plaintiff has a right to treble damages under the North Carolina UDTPA. *See Atl. Purchasers, Inc. v. Aircraft Sales, Inc.*, 705 F.2d 712, 716 n.4 (4th Cir. 1983) (expressing doubt that the North Carolina courts would uphold an award of punitive damages and statutory treble damages because the remedies are "overlapping.").

Second Life admits that the fraud caused damages to Sunbelt in the amount of $4,044,475. *Id*. ¶¶66, 112; (Doc. No. 138); (Case No. 5:21-CR-31 Doc. Nos. 18 ¶1, 4 ¶19). As all the elements are met, Sunbelt is entitled to summary judgment on its UDTPA claim under N.C. Gen. Stat. §75-1.1. Further, once a violation of Chapter 75 is established, "treble damages must be awarded." *Bhatti*, 400 S.E.2d at 442 (citing *Pinehurst, Inc. v. O'Leary Bros. Realty*, 79 N.C. App. 51, 61, 338 S.E.2d 918, 924 ("damages assessed pursuant to G.S. Sec. 75-1.1 are trebled automatically")). Sunbelt is thus entitled to judgment against Second Life for $12,133,425.

### I. Attorneys' fees

North Carolina law permits an award of attorneys' fees upon a finding that "[t]he party charged with the violation has willfully engaged in the act or practice, and there was an unwarranted refusal by such party to fully resolve the matter which constitutes the basis of such suit." N.C. Gen. Stat. §75-16.1. Second Life has not agreed to surrender anything to Sunbelt. This is sufficient for the Court to assess Sunbelt's attorneys' fees against Second Life.

### F. Count Seven: North Carolina RICO claim

To state a claim under the North Carolina Racketeer Influenced and Corrupt Organizations Act a plaintiff must allege (1) an injury or damage to his business or property (2) that resulted from two or more acts of organized unlawful activity or conduct, (3) one of which is something other than mail fraud, wire fraud, or fraud in the sale of securities, (4) that resulted in a pecuniary gain to the defendant. *See In re Bostic Const., Inc*., 2010, 435 B.R. 46 (Bankr. M.D.N.C. 2010); N.C. Gen. Stat. § 75D-4(a)(1).

Sunbelt lost $4,044,475 when Second Life and the Guzmans illegally sold their assets. This loss resulted from Second Life, with the Guzmans, engaging in a pattern of racketeering activity. This pattern of racketeering activity included an act besides mail, wire, or securities fraud – money

12

Case 5:20-cv-00070-KDB-DSC   Document 143   Filed 05/06/22   Page 12 of 14

laundering. (Doc. 1 ¶¶ 33-38, 63-67, 111-26); *See State of N.C. ex rel. Long v. Cooper*, 14 F. Supp. 2d 767, 772 (E.D.N.C. 1996) (citing N.C.G.S. § 75D-8(c)) (finding a "pattern" under the North Carolina Act is defined similarly to federal law, except that at least one predicate act must be something other than mail, wire, or securities fraud). This pattern sought to acquire Sunbelt's property and to sell it at auction for pecuniary gain, which was then transferred into Second Life's bank account. (Doc. 1 ¶¶ 28-34, 38, 63, 117-25). Thus, summary judgment will be granted to Sunbelt on its North Carolina RICO claim.

    G.    *Count Eight: Federal RICO claim*

The Racketeer Influenced and Corrupt Organizations Act "creates civil liability for those who engage in a pattern of racketeering activity." *GE Inv. Priv. Placement Partners II v. Parker*, 247 F.3d 543, 548 (4th Cir. 2011) (citing 18 U.S.C. §§ 1962, 1964). 18 U.S.C. §1964 creates a cause of action for "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. §1962]." The elements of a RICO claim under 18 U.S.C. § 1962(c) are (1) the conducting; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity. *See Whitney, Bradley & Brown, Inc. v. Kammermann*, 436 F. App'x 257, 258 (4th Cir. 2011). A RICO enterprise comprises "any individual, partnership, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Racketeering activity is defined as any act or thread involving specified state or federal crimes, which include mail and wire fraud, while a "pattern" of such racketeering activity requires at least two predicate acts committed within a 10-year period. *Southwood v. Credit Card Sol.,* No. 7:09-CV-00081-F, 2016 WL 8710985, at *9 (E.D.N.C. Feb. 26, 2016), *report and recommendation adopted sub nom. Southwood v. CCDN, LLC,* No. 7:09-CV-183-F, 2016 WL 1389596 (E.D.N.C. Apr. 7, 2016). Finally, a plaintiff must establish proximate causation, which requires "some direct relation

between the injury asserted and the injurious conduct alleged." *City of New York v. Gordon,* 155 F. Supp. 3d 411, 425 (S.D.N.Y. 2015) (granting summary judgment for plaintiff on RICO claim and finding proximate causation was established where the scheme "was designed to cause the very injury the [plaintiff] suffered").

Undisputedly, Second Life committed the required predicate acts, wire fraud and money laundering. These acts are among the predicate acts forbidden under RICO, and Second Life has already admitted to being a direct participant with the Guzmans in both acts. (Doc. 1 ¶¶ 30-38, 64-65, 129-34). Finally, the loss of $4,044,475 is a measurable injury to Sunbelt and stemmed from this pattern of racketeering activity. *Id*. ¶135. As a result, Sunbelt is entitled to summary judgment on its federal RICO claim against Second Life.

## I. ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. Plaintiff's Motion for Default Judgment (Doc. No. 139) is **GRANTED;**
2. Plaintiff is awarded $4,044,475 in compensatory damages, trebled for a total award of $12,133,425 under N.C. Gen. Stat. 75-1.1;
3. Plaintiff is also awarded reasonable attorneys' fees under N.C. Gen. Stat. §75-16.1; and
4. The Clerk of Court is directed to close this case.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: May 6, 2022

Kenneth D. Bell
United States District Judge