IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO. 5:20-CV-00070-KDB-DSC

| | |
|---|---|
| SUNBELT RENTALS, INC., | |
| Plaintiffs, | |
| v. | ORDER |
| SECOND LIFE EQUIPMENT, LLC; MICHAEL GUZMAN, | |
| Defendants. | |

**THIS MATTER** is before the Court on Plaintiff's Motion for Attorneys' Fees. (Doc. No. 145). The Defendants have failed to respond to the Motion, but the Court has carefully reviewed it. For the reasons briefly discussed below, the Court will grant the Motion and award fees, albeit at an amount less than requested by Plaintiff.

## I. BACKGROUND

Sunbelt Rentals, Inc., is a rental company offering various products, including construction equipment and industrial tools. In 2008 Sunbelt hired Michael Guzman and in 2016 promoted him to Manager of Fleet Operations. His duties included the disposal of aged equipment, which was often done through third-party auction houses. After his promotion, Guzman created Second Life Equipment, LLC with his wife, Jessica Guzman, and "Eric Dixon." "Eric Dixon" is a fictitious name that Guzman used to help run Second Life. Second Life was allegedly a purchaser and reseller of used equipment.

Between June 2019 and May 2020, Guzman engaged in a ruse to defraud Sunbelt by selling its assets through Second Life and another shell company. Guzman used bidadoo, an online auction

1

house, to sell equipment owned by Sunbelt. Guzman, as "Eric Dixon," contacted bidadoo and expressed an interest in selling equipment that he claimed had been sold to Second Life by Sunbelt. When bidadoo contacted Guzman, as a representative of Sunbelt, directly to confirm the sale, he hoodwinked them by confirming "Dixon's" story.

Due to this deception, 398 assets rightfully belonging to Sunbelt were uploaded on Second Life's customer portal with bidadoo and sold. The proceeds were then deposited into a Wells Fargo account controlled by Second Life and the Guzmans. The Guzmans used the proceeds to purchase various properties, vacations, and investments in securities. To conceal this ruse, Guzman manipulated the internal records of Sunbelt. This deceit was achieved by: (1) altering serial numbers for certain equipment in Sunbelt's system to make it appear that the equipment had been previously sold by Sunbelt, even though in reality it remained in Sunbelt's possession; (2) falsifying Sunbelt's records to make it appear that certain equipment had been disposed of or written off the books as junk when the equipment had not in fact been junked and still belonged to Sunbelt; and (3) manipulating credit remittances from equipment manufactures and trade package partners, by adding or dropping equipment from spreadsheets, while ensuring the dollar value remained the same, so that, while the assets listed might be different, the credit shown would match.

Sunbelt moved for Partial Summary Judgment as to Michael Guzman and the Court granted Sunbelt's Motion. (Doc. No. 137).[1] In its Order, the Court held that "North Carolina law permits an award of attorneys' fees upon a finding that '[t]he party charged with the violation has willfully engaged in the act or practice, and there was an unwarranted refusal by such party to fully resolve

---

[1] In the associated criminal case, *United States v. Michael R. Guzman*, Case No. 5:21-CR-31, Guzman pleaded guilty to counts of wire fraud and money laundering. Guzman further admitted that the proceeds of fraudulently selling Sunbelt's assets totaled $4,044,475.

the matter which constitutes the basis of such suit.' N.C. Gen. Stat. §75-16.1." *Id*. And the Court found that Guzman's actions "[were] sufficient for the Court to assess Sunbelt's attorneys' fees against Guzman."

After its counsel withdrew, this Court ordered Second Life to obtain substitute counsel within thirty days. (Doc. No. 91). Second Life failed to do so. Accordingly, Sunbelt moved for Entry of Default against Second Life, which the Clerk of Court granted. (Doc. Nos. 105, 107). The Court then granted Sunbelt's Motion for Default Judgment against Second Life, finding in part that Second Life was the alter ego of Michael Guzman and that an award of attorneys' fees was warranted. (Doc. No. 143)*Id*.

## II. DISCUSSION

In North Carolina, a court may "award [reasonable] attorneys' fees against the losing party in a suit alleging a violation of the UDTPA." *ABT Bldg. Prods. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 472 F.3d 99, 127 (4th Cir. 2006) (citing N.C. Gen. Stat. § 75-16.1). To do so, a court must find (1) "willfulness on the part of the party committing the violation" and (2) that the party engaged in "an unwarranted refusal to resolve the matter which forms the basis of the suit." *Id*. As noted above, the Court has already found that Plaintiff is entitled to attorneys' fees from Michael Guzman and Second Life. (*See* Doc. Nos. 137, 143). Consequently, the Court must now determine whether the amount requested is reasonable.

In awarding attorney's fees under N.C. Gen. Stat. § 75-16.1, the court "must make findings of fact to support the award. Appropriate findings include findings regarding the time and labor expended, the skill required to perform the services rendered, the customary fee for like work, and the experience and ability of the attorney." *Lapierre v. Samco Dev. Corp*., 103 N.C. App. 551, 561, 406 S.E.2d 646, 651 (1991).

3

Sunbelt asks this Court to award it $565,918.70 in attorneys' fees for prosecution of its claims. (Doc. No. 146). Having carefully reviewed the motion and the supporting documentation, the Court declines Plaintiff's request and finds instead that an award in the amount of $ 509,326.83 is appropriate. First, while the hourly rates charged by the Plaintiffs' attorneys are appropriate for the work considering the role of the Plaintiffs' attorneys and their number of years of practice, the Court finds that Plaintiff's counsel sometimes used more senior lawyers (at higher billing rates) than was necessary in light of the lack of opposition in the later stages of the case. (*See* Doc. Nos. 147-1, 148). Similarly, although the Court finds that the overall time expended by the Plaintiffs' attorneys might have been reasonable considering the nature of the case if it had been fully contested, Defendants' failure to respond or otherwise defend in the later stages warrants a reduction in fees because of the reduced complexity. The Court will accordingly reduce the requested fees by $20,036.67 to account for these staffing and time/complexity issues. And lastly, some of the requested fees, in the amount of $ 36,034.40, is for work unrelated to the Defendants, such as work that relates only to Jessica Guzman and the related criminal matter involving Michael Guzman. While this work arguably related to the claims against the Defendants, the Court finds that it would be inappropriate to assess these fees against the remaining Defendants under Section 75-16.1. In sum, a reduced award of $509,326.83 is reasonable considering the hourly rate of the attorneys, the complexity of the case, and the necessity to only assess fees that relate directly to the claims against the Defendants.

4

Case 5:20-cv-00070-KDB-DSC   Document 149   Filed 05/26/22   Page 4 of 5

# I. ORDER

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion for Attorneys' Fees and Costs, (Doc. No. 90), is **GRANTED, in part.** Plaintiffs are awarded attorneys' fees of $509,326.83.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: May 25, 2022

Kenneth D. Bell
United States District Judge